Good afternoon everyone. We have a single case on this afternoon's argument calendar, and that comes in Appeal 24-2377, Salvatore Ziccarelli v. Thomas Dart, Sheriff of Cook County. Mr. Flaxman, nice to see you. May it please the court. This is an appeal after this court remanded for trial. The jury heard the conflicting testimony from Mr. Ziccarelli and Ms. Shinoue. The jury was properly instructed. There was no evidentiary objections raised at trial that are preserved for appeal. There's no claim of improper closing argument by plaintiff's lawyer or improper conduct of any sort. The jury found in favor of the plaintiff and awarded damages. The district court set aside the verdict. The district court said, well, the evidence shows that after his conversation with Ms. Shinoue, Mr. Ziccarelli took one day of FMLA leave and then retired the next day. And as a matter of law, that means he could not have been deterred from taking FMLA leave by Ms. Shinoue. There are substantial procedural problems with this case about the Rule 50A motion not stating grounds. Unless there are questions on that, I'll stand on the brief for those arguments. Do you mind? I have one. I don't mind. Okay. I do have one question on that for you. And I know you probably want to move along. Suppose just for discussion purposes, and I know it's counter to the argument you make in your brief, but suppose that the plaintiff had made a proper Rule 50A motion. I'm sorry, defendant. Okay. Suppose that a proper Rule 50A motion was made, meaning one that was accompanied by full reasoning and a full record on it. What would have been different about the trial, if anything, had the motion been made along the lines that you briefed it? We could have called Mr. Ziccarelli to explain in greater detail why he took that one day of FMLA leave and then resigned or retired the next day. We were deprived of that opportunity because we didn't hear those grounds. Nobody attached the great significance to the one day of FMLA leave until Judge Stark did after trial. That issue actually was before this court in the last appeal in the papers. It was not argued vigorously. It was mentioned by defense counsel. It wasn't argued as, you have to disbelieve everything Mr. Ziccarelli says because he took one day of leave before he resigned, after his conversation with Mr. Shinawi. How, ladies and gentlemen of the jury, could he have been deterred? Could I just ask you one more follow-up and then you can go on. If you had recalled Mr. Ziccarelli, nothing about the recalled testimony would have changed the fact that he did, in fact, take the day after the phone call, after the conversation. It sounded like he realized that when he took the day, my words not his, that he thought that he would be on thin ice for having done so. Because he testified, did he not, that he actually thought he would get fired. He thought he'd get fired if he took three weeks or four weeks of leave. If he took one day of leave on a Monday and then turned in his resignation papers the next day, he knew that they wouldn't catch him. Nobody would pay attention to it. They'd be happy to see him gone. It wasn't like he was going to take a week and go to the hospital and then come back after a week where they would have investigated why he was off for a week. So your point is that if you would have recalled him, you would have just made a full record on that? Yes. And we were deprived of an opportunity because there were no grounds in the motion. So suppose the motion had simply said there's no sufficient evidence here of prejudice. Would that be sufficient to preserve this issue? No, it would not be. It would have to give us notice of what they're talking about, not just that we don't win. We should say that because he took one day of leave, he could not, as a matter of law. You think the motion has to be that specific? Yes, I believe it does. The jury heard the testimony of Mr. Ziccarelli, heard the testimony of Ms. Shinoue, and decided the case in favor of Mr. Ziccarelli. Unless there's some error made in evidence or argument or jury instruction, the court should respect the jury's verdict and reverse the grant of judgment as a matter of law. There are no grounds for a new trial that are presented in this record. There's the question of the remitter. We would ask this court to rule on that in the first instance rather than sending it back to the district court. Wouldn't that be awfully unusual? I think the court has done it, and I think they could do it. It was a seven-year-old case. It's not a question of power, but wisdom. I think the district judge has shown how he feels about the case. I think he doesn't think we should have won, and I think that would be reflected in his essentially non-reviewable decision on the remitter. That's why we ask if you are going to send it back to the district court, to go to a new judge, which this court does have the power to do. Power, yes. Wisdom, a different question. I can't argue with Your Honor about wisdom. If there are no further questions, I'll… Okay. You're going to have plenty of time for rebuttal if you want to use it. Okay. Ms. Horry, nice to see you whenever you're ready. May it please the court. After the telephone call with Ms. Shinawi, Mr. Ziccarelli took more FMLA leave. Mr. Ziccarelli concedes that he took more FMLA leave. His time records reflect that he took more leave. He was not disciplined for taking FMLA leave after the telephone call. And that is fatal to his claim because to prevail, Mr. Ziccarelli had to prove prejudice from the telephone call. Mr. Ziccarelli cannot show he was prejudiced because he took more FMLA leave. As such, the district court properly entered judgment as a matter of law because no reasonable jury could find prejudice based on this conversation. This court should affirm that judgment. This was a short trial on a narrow issue. Would have been helpful to take an extra five minutes or so, right? For a 50A motion, grounds stated on the record. The motion was made without objection and the court took it under advisement. Well, the question is whether that's really sufficient. I know that this came up at the stage of the trial where everybody, especially the judge, is in a hurry to get things done and get it to the jury. But isn't it counsel's responsibility when the judge is in a hurry to stand up and say, I need to make a record, Your Honor? And that's why there are objections. If Mr. Ziccarelli's counsel was unsure of the grounds, he could have objected or asked for clarification. Isn't that your responsibility? Go ahead. No, please. Wallace v. McLaughlin holds that this can be waived if the opposing side does not object. So when this matter was before this court before, you wrote an opinion that stated the elements of what Mr. Ziccarelli would have to prove. Can we go back to 50A for a second?  So you all were there. We weren't there. When you read it on the page of the transcript, it struck me that one possible takeaway from it was whether you put it in terms, as Judge Hamilton said, that the things needed to move along. It was pretty clear the case was going to go to a jury. Of course it was going to go to the jury that way. And I understand that in the dynamic against the backdrop of our prior remand. But what I want to try to clarify, is it your contention that the district court prevented you from making a record on the Rule 50A motion? And the reason that I ask you that question is there's nothing affirmatively saying I don't want to hear from you. No, of course not. That's not the way this district court judge doesn't do business that way. But the judge did seem, at least if you can glean anything from the transcript, seemed to have ruled pretty quickly on the motion. Like, I hear you. The motion's registered. I'm going to reserve judgment on it. This is going to the jury. Are you saying from that you couldn't have made a record? There was no ability to make a record? No. What I'm saying is the court took the Rule 50 motion under advisement without additional argument and without objection because the parties were very well aware of the reason for making the motion. Mr. Zagrelli was not prejudiced by the telephone call. There was no prejudice. He suffered no harm. That was the issue that was demanded. So what you're saying without using these words is basically given the history, given the path the litigation had traveled, that all of the reasons were effectively incorporated by reference against the backdrop of the history of the case. Yes. And to the extent Mr. Zagrelli didn't understand, he could have objected and we could have remedied. We could have stated the reasons right then and there. So as this court wrote, to prove prejudice, to prevail on his FMLA interference claim, Mr. Zagrelli had to prove harm resulting from the violation. The parties knew this. It was in the opinion. The parties discussed the length, the prejudice prong, and what damages could be recovered from any FMLA interference claim. Mr. Zagrelli's counsel admitted that it was crazy for him to quit. It was not objectively reasonable for him to quit. Mr. Zagrelli testified on the stand that Ms. Shinawi told him not to take a single hour more of FMLA. And after that telephone call, he took more FMLA. Mr. Zagrelli's later actions can't be placed on the sheriff's office. The causal link is broken. Mr. Zagrelli was not prejudiced by the telephone call. There's no way in your view a reasonable jury could have said, well, he made a choice to take an extra day, but then he was very clear in testifying that, well, I'm going to be fired for that, so I'm resigning. But it could have influenced, or so the argument would run, it could have influenced how he made choices about, because he had, I don't know if he had 168 hours or 176 hours banked. After he took the eight, it may have went down to 168, but the point's not a math point. The phone call couldn't have influenced what he did with that leave? You have to look at it from the objective reasonableness standard. If he testified that Ms. Shinawi told me I could not take a single hour more, yet he took more leave, it was not objectively reasonable for him to have that belief. Yeah, but I mean, he said, at the risk of being fired, I'm going to get ahead of the firing by quitting or resigning. That's in his subjective mind, that he could take, he testified he couldn't take any more leave, and then he took more leave. It was not objectively, and he wasn't disciplined after he took the additional leave. Well, because he got ahead of the discipline, right, by quitting or resigning. I don't know what was going through Mr. Shinawi's mind, why he resigned, but he did, after he spoke to Ms. Shinawi, he spoke to the Cook County Pension Board, Cook County Pension Board, he spoke to his union, and he took more leave. Any further points you want to make? No, we ask that you affirm the district court's judgment. Okay. I think the last series of questions makes it perfectly clear that this is a jury question, about whether he was deterred from taking FMLA leave by his conversation with Shinawi, or whether something else, or whether the fact that he took one day, which the jury knew about, and then retired the next day, it's a jury question. It's not, as a matter of law, disqualifying him from getting relief. The idea that the plaintiff should object to the defendant's Rule 50A motion as not stating grounds is a novel idea. I don't think it has any merit. The easiest thing to do when a district judge says, or absolutely prevents an attorney from stating grounds for a motion, is to file a written motion. That can be filed until midnight that day, and that would have preserved grounds, and I think we pointed out two citations to cases where a written motion was filed after an oral motion was made, and that's really the custom, to be sure. There used to be a judge who believed that Rule 50A required that motions be made in writing, and nobody could ever find the source for that, but it's the common practice in the district court for written motions to be filed to set out the grounds. Where do you think the jury's number came from? The jury's number came from either correcting our error about how much money his pension was. Of course, we said it was $33,000 in a closing argument, and it was $22,000 what he testified to. They also could have given us an extra year. We asked for three years. They could have given us four. Their number isn't a crazy number. It's not $5 billion for somebody who walked across your grass. It's in the range of reasonableness for what his total damages were. Assuming the sheriff's department is liable for his choice to retire when he did. That's what the jury found, and I think we should respect the jury's verdict. You have that table that you put in your brief that comes to, just call it 217 to round it off, and you're saying, yeah, I don't know. I mean, 217, 240 in the neighborhood. Is that your best? I read your table to be your best. You don't know because the jury didn't tell you, but it's kind of your best surmise as to how they came up with the number. That's one surmise. We had another surmise that we filed at district court where we said it was four years and not three. There are different ways to get there, but the difference between 217 and 240 is not a lot. It's well within the jury's discretion to make a round off error like that, especially when there's no special interrogatory asking them to. And that would be his pension for how many years? We said it was three. We asked for three. The jury could have given us four. Mr. Zuccarelli testified to four, and we only asked for three. On the assumption that he would not have left. That's correct, and he would have continued to work until he was 60. He really left early with significant financial penalties for doing that. Thank you very much. You're quite welcome. Mr. Flaxman, thanks to you. Ms. Horry, thanks to you, all your colleagues as well. We'll take the appeal under advisement.